[Cite as *State v. Wilson*, 2013-Ohio-1076.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24975 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 11-CR-2703 |
| v. | : | |
| | : | |
| KEITH A. WILSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Keith Wilson appeals from his conviction and sentence,

following no-contest pleas, upon two counts of Murder and two counts of Felonious Assault, all with firearm specifications, and all involving the same victim. In the same proceeding in the trial court, Wilson also pled guilty to Involuntary Manslaughter, involving a different victim, but he has not appealed from that conviction and sentence.

{¶ 2}    Wilson contends that his no-contest pleas were not knowing and voluntary, and also that his trial counsel was ineffective in relation to those pleas. We conclude that the record supports the trial court's conclusion that Wilson's no-contest pleas were knowing and voluntary. We also find no support in the record for Wilson's contention that his trial counsel was ineffective. Accordingly, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

{¶ 3}    Wilson was charged by indictment with Murder, in violation of R.C. 2903.02(B); with Murder, in violation of R.C. 2903.02(B); with Felonious Assault, in violation of R.C. 2903.11(A)(2); and with Felonious Assault, in violation of R.C. 2903.11(A)(1). All four charges included firearm specifications; all four also involved the same victim, Wilson's wife, Marny Wilson.

{¶ 4}    Meanwhile, police were investigating the 2000 killing of Elmer L. Bloodsaw, which they believed was caused by Wilson. This homicide never resulted in an indictment.

{¶ 5}    On Wednesday, November 30, 2011, with the trial of the Murder and Felonious Assault charges scheduled to begin the following Monday, the parties appeared in open court to discuss a possible plea bargain involving both homicides. The parties agreed that the charges involving the killing of Wilson's wife would all have to be merged. The

State informed the trial court that there had been discussions between the parties concerning a proposal whereby Wilson would plead to the murder of his wife, and the State would accept a plea to manslaughter for the Bloodsaw homicide. The State indicated that without the plea agreement, the Bloodsaw homicide would probably be charged as a felony murder, with firearm specification, as well as other felony charges.

{¶ 6} The State informed the trial court that the State had originally discussed a total sentence, for both homicides, of "about 27 – somewhere in the mid-twenties." As of that morning, however, the State indicated that it would agree to a total sentence, for both homicides, of 23 years to life. This would involve Wilson's plea to the indicted charges, for which a trial was set to commence in five days, and his plea to Involuntary Manslaughter in the Bloodsaw homicide, with no firearm specifications or other charges. Wilson would receive a sentence of fifteen years to life for the Murder of his wife, three years for the firearm specification, and five years for the Involuntary Manslaughter of Bloodsaw, to be served consecutively, for a total sentence of 23 years to life.

{¶ 7} Wilson complained that "I'm just now really finding out about this plea." His trial counsel pointed out that she had communicated the latest plea offer to Wilson the day before. Wilson asked for more time to discuss the plea offer with his family and to seek to retain counsel for a "second opinion" concerning the desirability of the plea offer.

{¶ 8} The trial court gave Wilson 20 minutes to consider the offer, but no more, considering the imminence of the trial. When the parties came back on the record, the State said that if Wilson would plead to his wife's Murder, Wilson could have until Friday, two days later, at noon, by which to accept the State's offer on the Bloodsaw homicide.

Otherwise, that offer would be off the table.

{¶ 9} After being informed that the pleas tendered would be no-contest pleas, the trial court then conducted a full plea colloquy on the indicted charges. Wilson participated actively in the colloquy, asking intelligent questions about the potential penalties, the fact that the trial would otherwise go forward on the following Monday, and what would happen if he were able to retain counsel for the trial. (His current trial counsel was appointed.) At the end of the colloquy, the trial court gave Wilson the opportunity to discuss the matter with his trial counsel, "and we'll give you the time to do that now."

{¶ 10} When the plea proceeding resumed, the trial court corrected some misinformation it had provided concerning the degree of the Felonious Assault felonies, and the maximum possible fine (although the trial court told Wilson it would not impose a fine). Wilson then had some additional questions, which the trial court answered to Wilson's apparent satisfaction. These questions included Wilson's asking whether "this is appealable," to which the trial court responded, after some discussion, in the affirmative.

{¶ 11} The trial court accepted Wilson's no-contest plea to each of the four indicted charges, with specifications, and set the matter for sentencing.

{¶ 12} On Friday, December 2, 2011, Wilson appeared in open court and tendered his plea of guilty to the Involuntary Manslaughter of Bloodsaw, which was charged by a bill of information. There was some discussion of the possibility that Wilson was tendering his plea with a protestation of innocence, which would trigger an inquiry under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Ultimately, however, Wilson tendered an unconditional plea:

THE COURT: M-hum. And if you're not pleading guilty because you are, in fact, guilty of the offense, then the Court needs to know why you're pleading guilty.

THE DEFENDANT: I'm pleading guilty 'cause – 'cause I'm guilty. Is that – is that what – is that it?

MS. SPELLS (representing Wilson): The Court can determine whether that's sufficient. He said he's pleading guilty 'cause he's guilty. I – the Court can determine whether that's sufficient basis. That sounds –

THE COURT: I think that's what we're looking for.

{¶ 13} From the trial court's remarks before the passage quoted above, it is clear that the trial court would have conducted an *Alford* inquiry if necessary. In any event, Wilson is not appealing from his Involuntary Manslaughter conviction.

{¶ 14} At the sentencing hearing, the four indicted counts were merged, and the State elected to have Wilson sentenced for the first Murder count. The firearm specifications were all merged. The trial court imposed the agreed-upon sentence: fifteen years to life for the Murder of Wilson's wife, three years for the firearm specification, and five years for the Involuntary Manslaughter of Bloodsaw, all to be served consecutively, for a total sentence of 23 years to life.

{¶ 15} At the end of the sentencing hearing, Wilson's counsel informed the trial court that Wilson had been inquiring concerning his appellate rights. A colloquy ensued in which the following occurred:

MS. SPELLS: I've explained to him, Your Honor, what appellate rights he has and it's –

Your question to appeal the manslaughter case?

THE DEFENDANT: No.

MS. SPELLS: Murder?

THE DEFENDANT: Yes.

{¶ 16} Consistently with the foregoing colloquy, Wilson filed a pro se notice of appeal the same day he was sentenced, in which he recites:

DEFENDANT MOVES THE COURT FOR AN [sic] SAID HEARING TO BE

HELD ON.   NOTICE OF APPEAL

– MEMORANDUM –

DEFENDANT WISHES TO APPEAL THE NO CONTEST PLEA.

{¶ 17} Of course, by appealing only from the Murder conviction, Wilson preserves the benefit of the five-year plea bargain for the Bloodsaw homicide, while seeking to reverse his eighteen-years-to-life Murder sentence.


**II.   The Record Supports the Trial Court's Conclusion that**

**Wilson's No-Contest Pleas Were Knowing and Voluntary**

{¶ 18} Wilson's First Assignment of Error is as follows:

A PLEA THAT IS NOT KNOWINGLY, INTELLIGENTLY AND

VOLUNTARILY ENTERED MUST BE VACATED.

{¶ 19} In support of this assignment of error, Wilson first argues that he "wasn't aware until his plea date that he was ineligible for community control," citing the following colloquy:

THE COURT: * * *

Now, you were never eligible, of course, in these cases for community control.

Do you understand that?

THE DEFENDANT: I'm not eligible for community control?

THE COURT: Or probation.   You're not –

THE DEFENDANT: Right.

THE COURT:   – going to get probation.

{¶ 20}   When the concept of supervision in lieu of incarceration was presented to him as "probation," and when he was told that he wasn't going to get probation, Wilson did not express any difficulty with that concept.   Just after this colloquy, the trial court explained   the concepts of parole and post-release control, and the fact that Wilson's being technically subject to post-release control[1] would be of no significance: "You'll have to be under the supervision of the Adult Parole Authority which you're going to be under their supervision for the murders anyway."   Wilson indicated that he understood.

{¶ 21}   Wilson next argues that at sentencing, he "still had not received documents that he requested and obviously was not informed concerning the implications of his sentence.  He simply did not understand."   Wilson cites the following colloquy at the sentencing hearing:

THE COURT: * * *

Mr. Wilson, anything you'd like to say before the Court imposes sentence?

---

[1] Query whether Wilson would ever be subject to post-release control, since he was only sentenced for the one Murder count.    In any event, Wilson did not indicate any difficulty understanding the concept of parole.

THE DEFENDANT: Yes, I'd like to say I needed some documents that I'm – I requested for the record.

THE COURT: Very well.

THE DEFENDANT: As far as the protective order that was dismissed initially.

THE COURT: M-hum.

THE DEFENDANT: I'm – I have not received that.

THE COURT: Okay. We'll ask your attorney to look into that. Anything additional?

THE DEFENDANT: Yes sir. What degree felony is this involun- -- involuntary manslaughter?

THE COURT: It is a –

MR. BRANDT [representing the State]: It's a felony of the first degree, Your Honor.

THE COURT: Felony one, yes.

THE DEFENDANT: Of what degree?

UNKNOWN MALE: It's a felony one.

THE DEFENDANT: That's just – that's just an F-1, no certain degree or nothin'?

THE COURT: No, it's a felony one.

THE DEFENDANT: Felony one, okay. Which one will be serving first?

THE COURT: M-hum.

THE DEFENDANT: Which one will I be serving first?

THE COURT: You'll be serving the three-year firearm specification on the murder specification first.

THE DEFENDANT: Then what?

THE COURT: Then you'll serve the attendant 15 years to life on that next.

THE DEFENDANT: Then when does – when does the five come in at?

THE COURT: I'm sorry?

THE DEFENDANT: I say when does the five years come in?   At the end?

THE COURT: At the end, yes.

THE DEFENDANT: Okay.   Where the – the deal papers at?

THE COURT: I believe that's the –

Do you have anything to add, Mr. Brandt?

MR. BRANDT: No, Your Honor.   I'd just note for the record this is a negotiated plea with an agreed sentence, total combined, of 23 to life on both –

THE COURT: Right.

MR. BRANDT:   – both the indictment as well as the (indiscernible) conviction.

THE COURT: Very well.

Anything further, Mr. Wilson?

THE DEFENDANT: So, is that correct the way that you said it would be served?

THE COURT: Yes.

THE DEFENDANT: And it's not concurrent?.

THE COURT: No.

THE DEFENDANT: And I get my time served?

THE COURT: Credit for time served according to law, yes.

THE DEFENDANT: Oh, that's it.

THE COURT: All right.

* * *

Following your release from prison, should you ever be released, you will be serving a term of parole for the rest of your life. If you violate any condition of parole or any law, then the parole board could bring you back to prison for the rest of your life.

THE DEFENDANT: Excuse me. What was that?

THE COURT: You're going to be on parole.

THE DEFENDANT: The rest of my life?

THE COURT: Yes. If you get out, you'll be on parole for the rest of your life. And if you are revoked from parole, then you would then serve a sentence for the rest of your life.

{¶ 22} The above-quoted colloquy is from the sentencing hearing, and would not normally affect the question of whether the trial court erred in accepting Wilson's plea, since the trial court is not required to anticipate what may happen at a subsequent hearing in determining whether a plea is tendered knowingly and voluntarily. In any event, we find nothing remarkable in the above-quoted colloquy. Wilson had some questions, and the trial court answered those questions, to Wilson's apparent satisfaction.

{¶ 23} Wilson also argues that the transcript of the sentencing hearing shows that he did not understand his appellate rights. We find nothing in the sentencing hearing to reflect that Wilson did not understand his appellate rights. He had ascertained at the plea hearing on the indicted counts that by pleading no contest he was preserving his right to appeal:

THE DEFENDANT: And this is appealable?

THE COURT: Yes.

THE DEFENDANT: Thank you.

THE COURT: I mean, it's a no contest plea, so everything's –

THE DEFENDANT: Thank you.

{¶ 24} At the end of the sentencing hearing, Wilson expressed an interest in appealing from the Murder conviction, but not from the Involuntary Manslaughter conviction. And Wilson did, in fact, appeal from the Murder conviction, on the same day that he was sentenced. There is nothing in this record to reflect that Wilson did not understand his appellate rights, much less that his inability to understand his appellate rights affected his decision to plead.

{¶ 25} Finally, Wilson argues that "[w]hen he indicated his concern about his representation, he was threatened by the Court with having to go to trial [with] unprepared counsel."

{¶ 26} At the outset of the plea hearing, Wilson's trial counsel informed the trial court that Wilson "indicated that he may have the financial resources to hire an attorney for a second opinion." Wilson's assigned counsel stated that she had done her preparation "and we are prepared and ready for Monday."

{¶ 27}   It is clear from the record that Wilson would have liked more time to consider the State's plea offer.   But there is nothing in the record to reflect that Wilson believed his assigned counsel was unprepared for trial, much less that she was, in fact, unprepared for trial.

{¶ 28}   We have reviewed the transcripts of both plea proceedings and the sentencing hearing.   We find nothing therein to reflect that Wilson's plea was other than knowing and voluntary.   Wilson's First Assignment of Error is overruled.

### III.   There Is Nothing in the Record to Support Wilson's Claim that He Received Ineffective Assistance of Counsel

{¶ 29}   Wilson's Second Assignment of Error is as follows:

A PLEA MADE DUE TO THE INEFFECTIVENESS OF COUNSEL MUST BE VACATED.

{¶ 30}   We find no support for this assignment of error in the record.   Although Wilson at one point expressed an interest in seeking to retain counsel for a "second opinion" as to the desirability of the State's plea offer, he never questioned his assigned counsel's competence.   In fact, in the following colloquy Wilson appears to have disclaimed any challenge to his assigned counsel's competence:

THE DEFENDANT: So there's a constitutional right for me to not – not have new counsel?   That's – is that against my constitutional rights?   When – 'cause you said that it – it's still set for – for Monday for trial and I couldn't get new – new counsel on the record?

THE COURT: You've indicated to the Court that you don't have the funds to

hire a lawyer and so we appointed one to represent you. And the Court is comfortable with the fact that, you know, that this lawyer which the Court chose for you is competent, able to communicate with you and prepare a defense for trial and give you advice, good legal advice, throughout the proceeding and we're confident with that.

Should you hire other counsel in the meantime, that would – I don't know if they could be ready by Monday to go to trial or not.

THE DEFENDANT: So it's still set forth to go Monday, no matter what?

THE COURT: Yeah, this case has been scheduled and we intend to go forward with it, yes.

THE DEFENDANT: *I'm not degrading her or anything;* I'm just – that was just a question that I have.

THE COURT: M-hum.

THE DEFENDANT: For the record. (Emphasis added.)

{¶ 31} We have reviewed the transcripts of the plea hearings and sentencing hearing. There is nothing to indicate that assigned counsel was less than diligent in representing Wilson. Counsel conferred with Wilson on several occasions, and communicated Wilson's concerns to the trial court on other occasions. Counsel also made sure that the provisions in the plea agreement that were favorable were clearly set forth in the record.

{¶ 32} Wilson's Second Assignment of Error is overruled.

## IV. Conclusion

{¶ 33} Both of Wilson's assignments of error having been overruled, the judgment of

the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
George A. Katchmer
Hon. Gregory F. Singer